**BOARD OF SUPERVISORS OF MILFORD TOWNSHIP**

v.

**Glenn D. McGOGNEY, Esquire, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 12, 2010.

Decided Jan. 6, 2011.

Glenn D. McGogney, Orefield, for appellant.

Terry W. Clemons, Doylestown, for appellee.

BEFORE: COHN JUBELIRER, Judge, and McCULLOUGH, Judge, and KELLEY, Senior Judge.

OPINION BY Judge McCULLOUGH.

Glenn D. McGogney, Esquire, (Requestor) appeals from the November 18, 2009, order of the Court of Common Pleas of Bucks County (trial court), which entered a permanent injunction directing Requestor to relinquish unredacted copies of invoices for legal services provided to Milford Township (the Township) by its solicitor and prohibiting Requestor from disclosing the unredacted invoices and/or using privileged information contained in the invoices in pending litigation.

On October 6, 2009, Requestor filed a Right to Know Law (RTKL)[1] request with the Township seeking the following:

> [C]opies of all invoices from Terry Clemmons, Esq. or anyone from the Law Office of Terry Clemmons to Milford Township from June 1, 2007 to the present for any services rendered in connection with [Coyotes Show Club].[2]

(Reproduced Record (R.R.) at 3.) The next day, Janya Awckland, the open records officer for the Township, discussed the RTKL request with the Township's solicitor.[3] (R.R. at 23–24.) The solicitor informed Awckland that it was necessary to redact all material in the invoices protected by the attorney-client privilege, and

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

2. A few weeks before he submitted the RTKL request, Requestor filed a complaint in Montgomery County against an entity known as the Univest Corporation averring that Univest conspired with the Township Board of Supervisors (Board) to shut down a business known as Coyotes Show Club.

3. In response to the enactment of the RTKL, the Board issued Resolution No. 2009–7, which created the position of open records officer and established procedures for handling requests for public records. (Supplemental Reproduced Record (S.R.R.) at 21–26.)

Awckland executed an affidavit describing the facts and circumstances of her handling of Requestor's RTKL request and the disclosure of the solicitor's invoices. (R.R. at 22–25.) The parties admitted the affidavit into the record and stipulated that, if Awckland were called to testify, her testimony would be substantially as stated in the affidavit. (S.R.R. at 15.)

he instructed Awckland that she should not provide any documents to Requestor until she heard from him. (R.R. at 23–24.) However, while the solicitor was reviewing the matter, Awckland grew concerned about the timeliness of her response to Requestor's request. (R.R. at 24.) Because of that concern, and without first contacting the solicitor, Awckland unilaterally sent Requestor fifty-seven pages of unredacted invoices.[4] (R.R. at 24; Stipulation of Counsel (Stipulation) ¶ 6, Supplemental Reproduced Record (S.R.R.) at 16.) The invoices described in detail the legal services the solicitor provided to the Township's Board of Supervisors (Board) concerning Coyotes Show Club over a period of time in excess of two and one-half years. (Stipulation ¶¶ 3, 6, S.R.R. at 15–16).

On October 20, 2009, at the first public hearing after disclosure of the invoices, the Board invoked the attorney-client privilege and authorized its solicitor to institute suit to protect against their release. (Stipulation ¶ 4, S.R.R. at 15.) The solicitor sent a letter to Requestor demanding the return of the unredacted invoices. (R.R. at 10–14.) (Stipulation ¶ 5, S.R.R. at 16.) Included with the letter were redacted versions of the same invoices. However, Requestor refused to return the unredacted invoices to the Township. (R.R. at 15.)

On October 26, 2009, the Board filed a complaint for declaratory and injunctive relief, and it subsequently presented a motion for a special injunction and a preliminary injunction. The trial court conducted a hearing, and the parties agreed to proceed on all aspects of the case based on stipulated facts and exhibits. (S.R.R. at 15–16.) On November 18, 2009, the trial court issued an order granting a permanent injunction that required Requestor to return all of the invoices and precluded him from using the information gleaned from these documents in litigation.

■■■ On appeal to this Court,[5] Requestor does not dispute that the solicitor's itemized invoices are privileged documents, and he concedes that Awckland could have refused the RTKL request.[6] (Requestor's brief at 9.) Nevertheless, Requestor contends that the trial court erred by issuing a permanent injunction because the Board waived the attorney-client privilege when Awckland responded to his RTKL request and provided him with the Township solicitor's unredacted invoices. Requestor also contends that the Board is bound by Awckland's actions, which were performed in her capacity as open records officer. We disagree.

---

**4.** Awckland had five business days to respond to Requestor's request. Section 901 of the RTKL, 65 P.S. § 67.901. She released the invoices on October 9, 2009, prior to the expiration of the five day response period.

**5.** Our scope of review of the grant or denial of a permanent injunction is limited to determining whether the trial court committed an error of law. *Telly v. Pennridge School District Board of School Directors*, 995 A.2d 898 (Pa.Cmwlth.2010). The standard of review for a question of law is plenary. *Penn Square General Corp. v. County of Lancaster*, 936 A.2d 158, 167 (Pa.Cmwlth.2007).

**6.** In *Schenck v. Township of Center*, 893 A.2d 849 (Pa.Cmwlth.2006), a requestor sought a

description of billed litigation services rendered to a municipality by its solicitor. The requested invoices included bills for the solicitor's services in a pending lawsuit against the municipality. We held that the description of litigation-related services in a municipal solicitor's invoice is not accessible under either the repealed Right to Know Act (Act of June 21, 1957, P.L. 390, *formerly*, 65 P.S. §§ 66.1–66.9) or the Sunshine Act (65 Pa.C.S. §§ 701–716) in the absence of consent from the client municipality. Requestor concedes that, pursuant to *Schenck*, a solicitor's itemized bill for services is *per se* privileged. (Requestor's brief at 9.)

The general rule is that, unless otherwise provided by law, a public record, legislative record, or financial record is accessible for inspection and duplication. Section 701(a) of the RTKL, 65 P.S. § 67.701(a). However, privileged documents are excluded from the definition of "public record" by section 102 of the RTKL, 65 P.S. § 67.102:

> "**Public Record.**" A record, including a financial record, of a Commonwealth or local agency that:
>
> . . . .
>
> (3) *is not protected by a privilege.*

(Emphasis added.) Section 102 of the RTKL defines "privilege" as "the attorney-work product doctrine, the attorney-client privilege, the doctor-patient privilege, the speech and debate privilege or other privilege recognized by a court interpreting the laws of this Commonwealth." As the United States Supreme Court recognized in *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981):

> The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client. As we stated last Term in *Trammel v. United States*, 445 U.S. 40, 51, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980): 'The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representa-

tion if the professional mission is to be carried out.' And in *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976), we recognized the purpose of the privilege to be 'to encourage clients to make full disclosure to their attorneys.' This rationale for the privilege has long been recognized by the Court, *see Hunt v. Blackburn*, 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488 (1888) (privilege 'is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure').

Further, section 506 of the RTKL states that an agency lacks the discretion to release privileged information:

> (c) **Agency discretion.**—An agency may exercise its discretion to make any otherwise exempt record accessible for inspection and copying under this chapter, if all of the following apply:
>
> . . . .
>
> (2) *The record is not protected by a privilege.*

65 P.S. § 67.506(c)(2) (emphasis added). Therefore, pursuant to sections 102 and 506(c)(2) of the RTKL, the invoices were not public records and Awckland did not have the discretionary authority to release the invoices to Requestor.

■ Also, we are guided by the Superior Court's decision in *Carbis Walker, LLP v. Hill, Barth & King, LLC.*, 930 A.2d 573 (Pa.Super.2007), a civil litigation case, where the Superior Court adopted a five-factor balancing test to determine whether the attorney-client privilege was waived by an inadvertent disclosure. Employing the reasoning set forth in *Fidelity & Deposit*

*Co. v. McCulloch,* 168 F.R.D. 516 (E.D.Pa. 1996), the *Carbis* court considered the following factors to determine whether an inadvertent disclosure amounted to a waiver of the attorney-client privilege: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosure; and (5) whether the overriding interests of justice would or would not be served by relieving the party of its errors.

Here, the Township's solicitor took reasonable precautions against disclosure by counseling Awckland that redactions were necessary to protect the attorney-client privilege and instructing her not to release any documents until she was told otherwise. However, Awckland chose not to follow the solicitor's directions and made an independent decision to release the invoices to Requestor. All of the documents were released in one disclosure on October 9, 2009. At its first opportunity thereafter, the Board invoked the attorney-client privilege and authorized its solicitor to take legal action to rectify the disclosure and protect the Township's rights. The solicitor promptly sent Requestor a letter demanding the return of the invoices and, at the same time, provided Requestor with redacted versions of the invoices. Furthermore, no overriding interest of justice is protected by allowing Requestor to benefit from Awckland's unauthorized actions. Although the inadvertent disclosure involved the release of fifty-seven invoices, this factor alone does not compel a finding that the privilege was waived. Therefore, we conclude that the *Carbis* factors militate against finding a waiver of the attorney-client privilege in this case.

■ Requestor contends that Awckland acted within the scope of her duties as the Township's open records officer when she released the invoices. He argues that Awckland had the ostensible authority to waive the privilege, and, thus, her actions are binding on the Board and Township. However, Section 502(b) of the RTKL shows that the functions of an open records officer are ministerial and administrative in nature:

**(b) Functions.—**

(1) The open-records officer shall receive requests submitted to the agency under this act, direct requests to other appropriate persons within the agency or to appropriate persons in another agency, track the agency's progress in responding to requests and issue interim and final responses under this act.

(2) Upon receiving a request for a public record, legislative record or financial record, the open-records officer shall do all of the following:

(i) Note the date of receipt on the written request.

(ii) Compute the day on which the five-day period under section 901 will expire and make a notation of that date on the written request.

(iii) Maintain an electronic or paper copy of a written request, including all documents submitted with the request until the request has been fulfilled. If the request is denied, the written request shall be maintained for 30 days or, if an appeal is filed, until a final determination is issued under section 1101(b) or the appeal is deemed denied.

(iv) Create a file for the retention of the original request, a copy of the response, a record of written communications with the requester and a copy of other communications. This subparagraph shall only apply to Commonwealth agencies.

65 P.S. § 67.502(b). Township Resolution 2009–07 does not expand the authority of the open records officer beyond those set forth in the preceding statute.

Here, after receiving the request, Awckland directed the matter to the solicitor in accordance with section 502(b)(1) of the RTKL. Instead of tracking the agency's progress in responding to the request (i.e. the status of the solicitor's review), she prematurely issued a final response and released privileged documents.

■ The attorney-client privilege belongs to the client. *Law Office of Douglas T. Harris, Esquire v. Philadelphia Waterfront Partners, LP*, 957 A.2d 1223 (Pa.Super.2008). The client in this case is the Board, and the waiver of the attorney-client privilege is a legal and policy question for the Board and its solicitor to decide. Although Awckland had the duty as open records officer to respond to RTKL requests, she was not authorized by the RTKL or Township Resolution 2009–07 to exercise the powers of the Board. *Compare Maleski v. Corporate Life Insurance Co.*, 163 Pa.Cmwlth. 36, 641 A.2d 1 (1994) (statutory liquidator had the power to waive the attorney-client privilege because he stood in the shoes of a corporation's former officers and directors). Waiver of the attorney-client privilege is a momentous decision, and Requestor has not demonstrated that Awckland possessed the actual authority to perform such an act or that he justifiably relied upon any appearance of her authority to do so.

Therefore, we hold that the solicitor's invoices were protected by the attorney-client privilege and that the trial court did not err by imposing the permanent injunction against Requestor. Accordingly, we affirm.

**7.** Act of February 14, 2008, P.L. 6, 65 P.S.

## ORDER

AND NOW, this 6th day of January, 2011, the November 18, 2009, order of the Court of Common Pleas of Bucks County is hereby AFFIRMED.

DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent. The majority concludes, *inter alia*, that the functions of an open records officer are ministerial and administrative in nature; therefore, the Milford Township open records officer did not have the actual authority to waive the attorney-client privilege. I disagree.

Pursuant to the general rule set forth in Section 901 of the Right–to–Know Law[7] (RTKL), the Township's open records officer, Janya Awckland, had five business days to respond to Requestor's request. As stated in the majority opinion, due to Awckland's concerns regarding the five day time limit, she sent the unredacted requested records to Requestor without the Township solicitor's consent. However, pursuant to Section 902 of the RTKL, 65 P.S. § 67.902, Awckland had another choice other than sending the unredacted requested documents to Requestor within five business days. Section 902 governs an extension of time and provides as follows:

(a) DETERMINATION.—Upon receipt of a written request for access, the open-records officer for an agency shall determine if one of the following applies:

(1) the request for access requires redaction of a record in accordance with section 706;

(2) the request for access requires the retrieval of a record stored in a remote location;

§ 67.901.

(3) a timely response to the request for access cannot be accomplished due to bona fide and specified staffing limitations;

(4) a legal review is necessary to determine whether the record is a record subject to access under this act;

(5) the requester has not complied with the agency's policies regarding access to records;

(6) the requester refuses to pay applicable fees authorized by this act; or

(7) the extent or nature of the request precludes a response within the required time period.

(b) NOTICE.—

(1) Upon a determination that one of the factors listed in subsection (a) applies, the open-records officer shall send written notice to the requester within five business days of receipt of the request for access under subsection (a).

(2) The notice shall include a statement notifying the requester that the request for access is being reviewed, the reason for the review, a reasonable date that a response is expected to be provided and an estimate of applicable fees owed when the record becomes available. If the date that a response is expected to be provided is in excess of 30 days, following the five business days allowed for in section 901, the request for access shall be deemed denied unless the requester has agreed in writing to an extension to the date specified in the notice.

(3) If the requester agrees to the extension, the request shall be deemed denied on the day following the date specified in the notice if the agency has not provided a response by that date.

Accordingly, under Section 902(a)(4) of the RTKL, if an open records officer is uncertain regarding his or her duty to disclose requested information under the RTKL,

the open-records officer may assert the need for an extension of time to, *inter alia,* determine if the request for access requires redaction of a record or perform a legal review to determine whether the requested information is subject to access. 65 P.S. § 67.902(a)(4); *Signature Information Solutions, LLC v. Aston Township,* 995 A.2d 510, 514 (Pa.Cmwlth.2010). Thus, no agency, such as the Township, can credibly claim that any requested records that the open records officer decided to disclose within the five business day time period are not subject to disclosure because it lacked sufficient time to thoroughly consider a request under the RTKL.

Herein, once Awckland performed her duty as the Township's open records officer and provided the requested records to Requestor, the documents were in the public domain. It matters not that Awckland may have made a mistake in providing the requested documents or that the requested records may be immune from disclosure based on attorney-client privilege. The Township authorized Awckland to perform all of the functions of the open records officer under the RTKL. In light of the aforementioned provisions of the RTKL, the Township cannot now claim that Awckland released the requested records prematurely when Section 902 of the RTKL provides an avenue for an open records officer to secure an extension of time to provide any requested records. Therefore, I would reverse the trial court's order.