Marc LEVY, Petitioner

v.

SENATE of Pennsylvania, Respondent.

Commonwealth Court of Pennsylvania.

Argued May 11, 2011.
Decided Oct. 6, 2011.

Gayle Chatilo Sproul, Philadelphia, for petitioner.

Matthew Hermann Haverstick and Mark Edward Seiberling, Philadelphia, for respondent.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and PELLEGRINI, Judge, and SIMPSON, Judge, and BUTLER, Judge.[1]

OPINION BY Judge SIMPSON.

In this Right–to–Know Law (Law)[2] appeal from a partial denial (redaction) of legislative records[3] of the Senate of Pennsylvania, we are asked whether the attorney-client privilege shields the names of clients and descriptions of legal services in bills presented to the Senate for reimbursement. In particular, Marc Levy appeals the decision of the Senate Appeals Officer which directed the Senate either to provide affidavits supporting the assertion of the attorney-client privilege or to provide the requested records "revealing the identity of the clients and any purpose for which the various attorneys are engaged." Pet'r's Br., App. A at 14 (Senate Appeals Officer, Final Determination Order, 9/16/10).

## I. Background

At issue are two requests. The first sought "all bills, contracts and payment records relating to the hiring of any outside lawyer or law firm to represent Sen. Robert J. Mellow beginning Jan. 1, 2009." Reproduced Record (R.R.) at 2a. The second request sought the same records regarding "any current or former employee of the Senate Democratic caucus." R.R. at 1a.

The Senate Open Records Officer responded to the requests and provided about 100 pages with redactions. Specifically, the Senate produced five sets of financial records relating to five clients employed by the Senate who, pursuant to the Senate Committee on Management Operations (COMO) Policy for the Payment of Legal Services, were provided with outside counsel.

The reason for the redactions was stated to be "the attorney-client privilege." R.R. at 3a. Primarily, the names of the five clients and the description of legal services provided to them were redacted. Other information in the financial records was available.

Levy appealed the partial denial to the Senate Appeals Officer, taking the position

---

1. Judge Leavitt recused herself after argument. Judge Butler is substituting for Judge Leavitt and is considering the case on briefs.

2. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104. The Law repealed the former Right–to–Know Law, Act of June 21, 1957, P.L. 390, *as amended, formerly* 65 P.S. §§ 66.1–66.4.

3. Section 102 of the Law, 65 P.S. § 67.102, defines "**Legislative record**" to include a financial record relating to a legislative agency. Similarly, "**Legislative agency**" is defined to include "The Senate."

Section 1301 of the Law, 65 P.S. § 67.1301, provides that appeals from a final determination of an appeals officer relating to a decision of a legislative agency shall be taken to the Commonwealth Court.

that the redacted information was not privileged. The parties submitted memoranda. In its memorandum, the Senate addressed the attorney-client privilege, and it also discussed the work product privilege, grand jury secrecy, and an exemption relating to a criminal investigation. *See* Section 708(b)(16) of the Law, 65 P.S. § 67.708(b)(16).

In an opinion accompanying his final determination, the Senate Appeals Officer discussed the attorney-client privilege at length.[4] He reviewed copies of the redacted records to determine whether the criteria necessary for the attorney-client privilege were present. He concluded that most of the criteria were present, but it was impossible to determine whether or not the communications of identity and the purpose for which the attorney was being engaged were made "without the presence of strangers" and "not for the purpose of committing a crime or tort." Final Determination, September 16, 2010 at 8. Because the attorney-client privilege deserves the utmost deference, he ordered that the Senate could remedy the lack of objective indicia by providing supplemental affidavits.

The Senate Appeals Officer also addressed Levy's argument that any privilege was waived because the bills for legal services were submitted to the Chief Clerk of the Senate for the purpose of paying the legal fees. He concluded that such intra-Senate type communications may retain a privileged status and be shared with employees on a "need-to-know" basis. The Chief Clerk is an elected officer of the Senate, and it is well within his duties to receive copies of the records and make payment of the legal fees incurred by the Senate on behalf of its members and employees. In the absence of some indication of waiver on the face of the records, they retain their privileged status.

Unfortunately, the Senate Appeals Officer did not specify a time within which to produce supplemental affidavits or unredacted records. On Friday, October 15, 2010, which was the twenty-ninth day after the final determination was mailed, Levy appealed to this Court. At that point, neither supplemental affidavits nor unredacted records had been produced by the Senate. Pursuant to Section 1301(b) of the Law, 65 P.S. § 67.1301(b), the appeal stayed release of documents.

## II. Appeal

### A. Generally

While the appeal was pending in this Court, the Pennsylvania Supreme Court rendered an important decision on the attorney-client privilege, *Gillard v. AIG Insurance Company*, 609 Pa. 65, 15 A.3d 44 (2011). The holding in that case essentially broadened the attorney-client privilege to cover not only confidential client-to-attorney communications but also confidential attorney-to-client communications made for the purpose of obtaining or providing professional legal advice. *Id.* at 85, 15 A.3d at 59. Although the case did not deal with bills for legal services or the identities of clients, the Supreme Court's analysis is useful here and will be discussed below.

After appellate argument, and in an effort to untie the procedural knot arising

---

4. The Senate Appeals Officer also briefly addressed the arguments raised by the Senate for the first time in its legal memorandum. The Appeals Officer decided there was insufficient record information to determine that grand jury secrecy should attach, that the records were exempt as relating to a criminal investigation, or that the attorney-work product doctrine protected client identity or the purpose or reason a client engaged an attorney.

from the timing of the appeal and the application of an automatic stay, we entered a case management order which allowed the Senate to file a supplemental affidavit as ordered by the Senate Appeals Officer within 10 days. *See Bowling v. Office of Open Records,* 990 A.2d 813 (Pa. Cmwlth.2010) *(en banc ), appeal granted,* 609 Pa. 265, 15 A.3d 427 (2011) (reviewing court may supplement record to ensure adequate review; court should consider manner of proceeding most consistent with justice, fairness and expeditious resolution). The affidavit was timely filed, and it is appended to this decision as Attachment A.

In addition, we ordered production of unredacted records for *in camera* judicial review. *See Pa. State Police v. Office of Open Records,* 5 A.3d 473 (Pa.Cmwlth. 2010) (court conducted *in camera* review of incident reports to determine whether exception under the Law applied); *Bowling* (Law does not expressly prohibit *in camera* review); *see also Gillard* (trial court conducted *in camera* review of documents subject to asserted privilege on the record and in presence of counsel; *in camera* judicial review provides essential check against possibility for abuse of privilege). *In camera* judicial review was undertaken by Senior Judge James R. Kelley, acting as special master for the *en banc* panel. His report was filed under seal on July 25, 2011. Although the unredacted records shall remain under seal, the report is UNSEALED, and it is appended to this decision as Attachment B. His recommendations are accepted and entered as supplemental findings and conclusions by the *en banc* panel. His recommendations are discussed below.

In an appeal to this Court under Section 1301 of the Law, 65 P.S. § 67.1301 (pertaining to Commonwealth, legislative and judicial agencies), we act in our appellate jurisdiction, but we independently review the appeals officer's orders, and we may substitute our own findings of fact. *Bowling.* Further, we exercise the broadest scope of review. *Id.* The issue of whether the attorney-client privilege protects a particular communication from disclosure is a question of law. *Nationwide Mut. Ins. Co. v. Fleming,* 924 A.2d 1259 (Pa.Super.2007), *aff'd on other grounds by an equally divided court,* 605 Pa. 468, 992 A.2d 65 (2010). For any question of law, this Court's standard of review is *de novo* and our scope is plenary. *Id.*

**B. Contentions**

Generally, Levy contends the Law establishes a presumption of public access to government records, especially, as here, to records relating to the expenditure of public funds. The Senate bears the burden of rebutting that presumption and establishing a lawful basis for redaction, but it failed to carry its burden.

More specifically, Levy argues that the attorney-client privilege does not shield from disclosure the identities of public employees who receive publicly funded legal representation or the nature of the services provided at public expense. Citing pre-*Gillard* cases, Levy argues the Senate's blanket redaction conflicts with established Pennsylvania privilege law, which protects attorney-to-client communications only when those communications reflect the confidential client-to-attorney communications. Levy also seeks to distinguish two Commonwealth Court cases addressing redactions of the description of legal services in bills, *Board of Supervisors of Milford Township v. McGogney,* 13 A.3d 569 (Pa.Cmwlth.2011), *appeal denied,* —— Pa. ——, 24 A.3d 364 (2011), and *Schenck v. Township of Center, Butler County,* 893 A.2d 849 (Pa.Cmwlth.2006).

Further, Levy contends that the Senate misstates the narrow circumstances where client identities may be privileged. The Senate did not establish those narrow circumstances here.

In addition, Levy argues that the unidentified clients waived any privilege by seeking reimbursement from the third-party Senate.

In addition to his primary arguments, Levy makes other points. He generally contends that the Senate's alternate arguments (work product, grand jury secrecy and investigative exemption) are unpersuasive. Also, he decries the tenor of the Senate's written argument.[5]

In its spirited written arguments on the merits, the Senate contends that this Court should conclude as a matter of law that the attorney-client privilege applies to protect client identities and the purpose or reasons why various attorneys were engaged. Relying on *McGogney, Schenck* and two advisory opinions from the Pennsylvania Bar Association Committee on Legal Ethics and Professional Responsibility, the Senate argues that Pennsylvania law protects the information redacted here.

Also, the Senate acknowledges the general rule that attorney billing records are generally not protected by the attorney-client privilege. However, the Senate urges application of either of two overlapping exceptions to the general rule which protect a client's identity in certain circumstances. The first is the legal advice exception, which arises where there is a strong possibility that disclosure of the fact of retention or of the details of a fee arrangement is tantamount to disclosing why the person sought legal advice in the first place. *See United States v. Liebman,* 742 F.2d 807 (3d Cir.1984); *In re Grand Jury Investigation,* 631 F.2d 17 (3d Cir. 1980). The second overlapping exception is the confidential communications exception, which protects client identity and services performed by an attorney if, by revealing the information, the attorney would necessarily disclose confidential communications. The Senate cites federal cases beyond the Third District. According to the Senate, two of the records state on their face that they are related to an ongoing criminal grand jury investigation. Supplemental Reproduced Record (S.R.R.) at 140a, 145a. Moreover, "revelation of the services performed for the five clients would undoubtedly reveal the motive of the clients in seeking representation (i.e., to navigate the grand jury process), as well as the attorney's specific advice in navigating that ... process." Respondent Br. at 23.

The Senate further contends that indemnification of legal fees does not waive the attorney-client privilege. The Chief Clerk of the Senate, who is also the open records officer, is an agent of the Senate for purposes of privilege analysis. Pursuant to the Senate COMO Policy for the Payment of Legal Services,[6] he must preserve the privilege. The privilege can only be waived by the clients.

---

5. Both parties offer extensive and animated procedural arguments stemming from the timing of the appeal, the Senate's failure to file supplemental affidavits or produce unredacted records, and the Senate's failure to appeal or cross-appeal. We deem these procedural arguments moot in view of our case management order, and they will not be discussed further.

6. The policy was produced by the Senate as part of its Supplemental Reproduced Record. In the absence of objection, we take judicial notice of the policy. Pa.R.E. 201(c), (f); *Bowling* (reviewing court may supplement record to ensure adequate review).

Finally, the Senate urges the merits of it alternate bases for redaction.

After the Supreme Court issued its decision in *Gillard,* both parties supplemented their arguments. Offering a broad interpretation, the Senate argued that the Court in *Gillard* expressly rejected Levy's contention that the attorney-client privilege is limited to confidential communications from a client. Thereafter, Levy rejoined that *Gillard* does not bring client identity within the privilege. Also, *Gillard* does not justify blanket redactions, nor does that decision impact the waiver issue.

## C. Discussion

### 1. Alternate Bases for Redaction

While the parties argue about other privileges and exemptions, those alternate bases for redaction are waived. This is because the only reason given by the Senate's Open Records Officer for the redaction was "the attorney-client privilege." R.R. at 3a; *see Signature Information Solutions, LLC v. Aston Twp.,* 995 A.2d 510 (Pa.Cmwlth.2010) (local agency not permitted to alter its reason for denying request on appeal to the Office of Open Records).

### 2. Attorney–Client Privilege

#### a. Generally

The attorney-client privilege has deep historical roots and indeed is the oldest of the privileges for confidential communications in common law. *Fleming; McGogney.* It is designed to encourage trust and candid communication between lawyers and their clients. *Gillard,* 609 Pa. at 85, 15 A.3d at 57 (*citing,* among other authority, RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 68 cmt. c (2000) (privilege "enhances the value of client-lawyer communications and hence the efficacy of legal services")).[7] The privilege affords derivative protection to attorney-to-client communications. *Id.* A broader range of derivative protection is appropriate to facilitate open communication. *Id.* Our Supreme Court recognizes the difficulty in unraveling attorney advice from client input and stresses the need for greater certainty to encourage the desired frankness. *Id.*

The attorney-client privilege often competes with other interests-of-justice factors. *See id.* The privilege here is in tension with the purpose of the Law, which is remedial legislation designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions. *Bowling.*

The general rule is that, unless otherwise provided by law, a legislative record is accessible for inspection and duplication.

---

7. In Pennsylvania, the attorney-client privilege is codified by statute:

   **§ 5928. Confidential communications to attorney**

   In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

   42 Pa.C.S. § 5928. Pennsylvania codified the privilege in 1887. *See* Act of May 23, 1887, P.L. 158, § 5d (*formerly* 28 P.S. § 321). The statutory provision regarding privilege was reenacted in 1976 without substantive changes, as quoted above.

   Similarly, in the context of a criminal case:

   **§ 5916. Confidential communications to attorney**

   In a criminal proceeding counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

   42 Pa.C.S. § 5916.

Section 710(a) of the Law, 65 P.S. § 67.701(a); *McGogney*. However, a legislative record is not presumed to be available in accordance with the Law if it is protected by a privilege. Section 305(b) of the Law, 65 P.S. § 67.305(b). Similarly, privileged documents are excluded from the definition of "public record" by Section 102 of the Law. 65 P.S. § 67.102; *McGogney*. Section 102 of the Law also defines "privilege" as including the attorney-client privilege. *Id.* Further, Section 506 of the Law states that an agency lacks discretion to release privileged information. 65 P.S. § 67.506(c)(2); *McGogney*.

■ The party asserting the attorney-client privilege must initially set forth facts showing that the privilege is properly invoked. *Fleming; see also Dep't of Transp. v. Office of Open Records,* 7 A.3d 329 (Pa.Cmwlth.2010) (agency failed to carry its burden of showing documents covered by privilege). This burden is similar to the burden imposed by the Law on an agency to justify a total or partial denial (redaction). Section 903 of the Law, 65 P.S. § 67.903.

### b. General Rules

### i. Client Identity

As to the issue of whether a client's identity falls within the scope of the attorney-client privilege, an American Law Reports 3rd (A.L.R.3d) article on that issue provides:

> It has been said that the reason underlying the attorney-client privilege is to encourage a client to disclose fully the facts and circumstances of his case to his attorney without fear that he or his attorney will be compelled to testify as to the communications had between them. Since the privilege results in the exclusion of evidence it runs counter to the widely held view that the fullest disclosure of the facts will best lead to the truth and ultimately to the triumph of justice. In reconciling these conflicting principles the courts have pointed out that since the policy of full disclosure is the more fundamental one, the privilege is not to be viewed as absolute and is to be strictly limited to the purpose for which it exists.
>
> *There is general agreement among the courts that where an inquiry is directed to an attorney as to the name or identity of his client the attorney-client privilege is inapplicable* even though the information was communicated confidentially to the attorney in his professional capacity, in some cases in spite of the fact that the attorney may have been sworn to secrecy. This principle has been supported, with some exceptions, in criminal and tax proceedings ... as well as in civil actions, the courts often basing its application on the premise that since the privilege presupposes the attorney-client relationship, it does not attach to its creation. *It is therefore concluded that a client's identity, which is necessary proof of the existence of the relationship is, similarly, not privileged information....*
>
> *While the disclosure of the name or identity of a client is generally held not, in and of itself, a matter within the attorney-client privilege, it has become so in situations in which so much has been divulged with regard to the legal services rendered or the advice sought, that to reveal the client's name would be to disclose the whole relationship and confidential communications.* Thus, in a number of civil actions courts have declared a client's name privileged where the subject matter of the attorney-client relationship has already been revealed; and in criminal proceedings, particularly where the attorney is not the accused, courts have recognized that

a client's name may be privileged if information already obtained by the tribunal, combined with the client's identity, might expose him to criminal prosecution for acts subsequent to, and because of, which he had sought the advice of his attorney. Similarly, in tax proceedings, some courts have declared a taxpayer-client's name privileged when so much has been revealed concerning the legal services rendered that the disclosure of the client's identity exposes him to possible investigation and sanction by government agencies. . . .

*In a number of cases the courts have held or recognized that, as a general principle, the name or identity of an undisclosed client is not proper subject matter for a confidential communication and will not ordinarily be treated as privileged information.*

R.M. Weddle, Annotation, *Disclosure of Name, Identity, Address, Occupation, or Business of Client as Violation of Attorney–Client Privilege,* 16 A.L.R.3d 1047 (2008) (emphasis added) (footnotes omitted).

Further, as explained by Professor Paul R. Rice, in his treatise entitled Attorney–Client Privilege in the United States:

Establishing the existence of an attorney-client relationship usually requires the identification of the client. *The client's identity,* moreover, *is not important to the substance of the legal advice or assistance sought. Therefore, that information is usually is not protected by the attorney client-privilege.* This is also true of the names of prospective clients. Similarly, it does not protect the identity of those who are agents of the client, and through whom the client has communicated with the attorney. *The client cannot reasonably assume that his identity will be confidential.*

As explained in *Behrens v. Hironimus[,]* [170 F.2d 627, 628 (4th Cir. 1948) ]:

*The existence of the relationship of attorney and client is not a privileged communication.* The privilege pertains to the subject matter, and not to the fact of employment as attorney, and since it presupposes the relationship of attorney and client, it does not attach to the creation of that relationship. *So, ordinarily, the identity of the attorney's client,* or the name of the real party in interest, or the terms of the employment *will not be considered as privileged matter. The client or the attorney may be permitted or compelled to testify as to the fact of his employment as attorney, or as to the fact of his having advised his client as to a certain matter, or performed certain services for the client.*

Paul R. Rice, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES, § 6:14 (2d. ed.1999) (footnotes omitted).

The parties do not cite any Pennsylvania state cases that directly answer the question of whether a client's identity is covered by the attorney-client privilege. Nevertheless, there are two early Pennsylvania Supreme Court cases that specifically recognize the rule that a client's identity is not shielded by the attorney-client privilege.

■ More specifically, in *In re Seip's Estate,* 163 Pa. 423, 30 A. 226 (1894), our Supreme Court explained that the mere fact of employment of an attorney is not privileged. *Accord. Sargent v. Johns,* 206 Pa. 386, 55 A. 1051 (1903) (mere fact of employment of an attorney is not a confidential or privileged communication). As a result, the Court held that an attorney was competent to testify regarding his client's identity and an objection on the grounds of privilege could not prevail.

This rule was more clearly expressed by the Pennsylvania Supreme Court in *Beeson v. Beeson*, 9 Pa. 279, 1848 WL 5605 (Pa.1848), where the Court explained:

> With respect to the testimony of Mr. Veech[,] [an attorney], it is not objected that he was permitted to disclose the fact of his having been retained by Jesse Beeson.... *It is conceded such an objection could not have prevailed, for an attorney is compellable to disclose, not only the name of the person by whom he was retained, but also the character in which his client employed him; whether as executor, trustee, or on his private account....*

*Id.*, 1848 WL 5605, at *13 (emphasis added) (citation omitted).

Federal cases within the Third Circuit adhere to the rule that a client's identity is not privileged. *See In re Grand Jury Investigation*, 631 F.2d 17 (3d Cir.1980) ("in the absence of unusual circumstances, the privilege does not shield ... the identity of clients...."); *In re Semel*, 411 F.2d 195, 197 (3d Cir.1969) ("In the absence of unusual circumstances, ... *the identity of the client*, the conditions of employment and the amount of the fee *do not come within the privilege of the attorney-client relationship.*") (emphasis added); *Mauch v. Comm'r of Internal Revenue*, 113 F.2d 555, 556 (3d Cir.1940) (the "authorities are almost unanimous in excluding bare identity from the scope of the privilege."); *United States v. Cedeno*, 496 F.Supp.2d 562, 567 (E.D.Pa.2007) (noting "the attorney-client privilege exists to protect confidential communications between a lawyer and a client; in most cases, the disclosure of a fee arrangement or a client's identity does not disclose the substance of any confidences.") (Citation omitted); *see also United States v. Grand Jury Investigation*, 401 F.Supp. 361 (W.D.Pa.1975) (same).

The Senate relies on two informal advisory opinions from the Pennsylvania Bar Association Committee on Legal Ethics and Professional Responsibility which seek to protect client identity.[8] We greatly respect the thoughtful views of the Association; nevertheless, in light of the extensive and binding authority to the contrary, and mindful of the self-acknowledged limitations of the advisory opinions,[9] we decline the invitation to follow them in this context.

### ii. Description of Legal Services

■ Similarly, attorney fee agreements and billing records are generally subject to disclosure in Pennsylvania. Thus, our Supreme Court in *Commonwealth v. Chmiel*, 585 Pa. 547, 599, 889 A.2d 501, 531 (2005), a capital murder case, agreed with the trial

---

**8.** *See Informal Op. No. 94–119*, 1994 WL 928075 (Sept. 6, 1994); *Informal Op. No. 90–174*, 1990 WL 709683 (Dec. 17, 1990). *Informal Opinion No. 94–119* relied on *Informal Opinion No. 90–174* for the proposition that revealing information without the client's permission, even the fact of representation, is prohibited by Rule 1.6 of the Rules of Professional Conduct. *Informal Opinion No. 90–174* relied on language in *former* Disciplinary Rule DR 4–101 that expressly prohibited a lawyer from revealing "a confidence or secret of his client, *including his identity* ... (emphasis provided)." However, the language relied upon was *not* made part of the current

Rule 1.6 of Professional Conduct or the Comment to the Rule.

**9.** Both of the informal advisory opinions contain the following caveat:

> Th[is] ... opinion is advisory only and is not binding on the Disciplinary Board of the Supreme Court of Pennsylvania or any court. It carries only such weight as an appropriate reviewing authority may choose to give it. Moreover, this is the opinion of only one member of the Committee and is not an opinion of the full Committee.

court that "disclosure of a fee agreement between an attorney and client does not reveal a confidential communication." The Court held that "[b]ecause the [prior attorney's] testimony regarding the fee agreement ... does not disclose strategy or otherwise divulge confidential information, it is not subject to the attorney-client privilege." *Id.* at 599, 889 A.2d at 532.

Also, in *Slusaw v. Hoffman,* 861 A.2d 269 (Pa.Super.2004), the Superior Court addressed production of invoices billed by attorneys to their client. The client objected to production of the bills on the basis of the attorney-client privilege. Recognizing the derivative protection for confidential attorney-to-client communication, the Court nevertheless ordered production of the bills to the extent the bills did not disclose confidential communications from the client. The Court stated, "If the invoices contain any references to such confidential communications, those references can be redacted from the invoices." *Id.* at 273.

We reject as inapplicable much of the authority on which the Senate relies to shield from disclosure descriptions of legal services. In *Schenck,* a case under the former Right–to–Know Law, the attorney-client privilege was not at issue; rather, the case was decided on the basis of the work product rule applied during on-going litigation. Thus, that case is distinguished on both law and facts. In *McGogney,* a case under the current Law, the requestor did not contest application of a privilege; therefore, this Court did not decide the issue. *McGogney,* 13 A.3d at 571, n. 6. Accordingly, that case is not helpful in resolving the current controversy.

### c. Exception

The limited exception to the general rule is, according to Professor Rice, variously described as the "legal advice" or "confidential communications" exception. The Senate also relies on this exception. Regarding the client's identity, Professor Rice describes the exception in this way:

> When the confidentiality of the client's identity has been substantively linked to the advice that was sought, however, courts have afforded it protection because disclosure would implicate the client in the very matter upon 'which legal advice was being sought.' Under such circumstances the client *could* have a reasonable expectation that his identity would be confidential. This exception has variously been described as the 'legal advice' or 'confidential communications' exception.

Paul R. Rice, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES, § 6:14 (2d. ed.1999) (footnotes omitted).

■ We are unaware of any Pennsylvania state case that applied the exception to shield the name of a client.[10] However, the Third Circuit recognized the exception to the general rule when "so much of the actual communication had already been established, that to disclose the client's name would disclose the essence of a confidential communication...." *United States v. Liebman,* 742 F.2d 807, 809 (3d Cir.1984) (citations omitted). Thus, the identity of a client may become privileged if the person asserting the privilege can show "a strong probability that disclosure of the fact of retention or of the details of a fee arrangement would implicate the client in the very criminal activity for which the advice was sought." *In re Grand Jury Investigation,* 631 F.2d at 19.

---

10.  *But see Brennan v. Brennan,* 281 Pa.Super. 362, 422 A.2d 510 (1980) (*en banc*) (petition for contempt arising in child custody litigation; attorney-client privilege protects home address where client asks attorney to keep information confidential).

Further, in addressing disclosure of a fee agreement, our Supreme Court in *Chmiel* cited the Third Circuit decision *In re Grand Jury Investigation* for the proposition that the "attorney-client privilege does not protect fee agreements absent [the] strong probability that disclosure would implicate [the] client in [the] criminal activity for which client sought legal advice." *Chmiel,* 585 Pa. at 599, 889 A.2d at 531–32. Given the existence of the Third Circuit cases and our Supreme Court's recent citation to one of them, it is possible that the Court would apply the exception in the rare instance when it is appropriate.

Moreover, in *Gillard* the parties and the Supreme Court gave much attention to RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS. Ultimately, the Court adopted a position on broad derivative privilege which is consistent with that set forth in the Restatement. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 69 cmt. i (2000) (rejecting limitation on, protection of lawyer communication unless it contains or expressly refers to a client communication in favor of broader rule). Under these circumstances, it is useful to examine the Restatement's approach to protection of a client's name and billing information. Comment g to Section 69 of the RESTATEMENT (THIRD) OF THE LAW GOV-ERNING LAWYERS (entitled "Attorney–Client Privilege—'Communication' "), states:

> *g. Client identity, the fact of consultation, fee payment, and similar matters.* Courts have sometimes asserted that the attorney-client privilege categorically does not apply to such matters as the following: *the identity of a client; the fact that the client consulted the lawyer and the general subject matter of the consultation;* the identity of a nonclient who retained or paid the lawyer to represent the client; *the details of any retainer agreement; the amount of the agreed-upon fee;* and the client's whereabouts. *Testimony about such matters normally does not reveal the content of communications from the client.* However, *admissibility of such testimony should be based on the extent to which it reveals the content of a privileged communication. The privilege applies if the testimony directly or by reasonable inference would reveal the content of a confidential communication. But the privilege does not protect clients or lawyers against revealing a lawyer's knowledge about a client solely on the ground that doing so would incriminate the client or otherwise prejudice the client's interests ....*

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 69 cmt. g (2000).[11]

11. The Restatement provides the following example regarding this exception:

> Client consults Lawyer about Client's taxes. In the consultation, Client communicates to Lawyer Client's name and information indicating that Client owes substantial amounts in back taxes. The fact that Client owes back taxes is not known to the taxing authorities. Lawyer sends a letter to the taxing authorities and encloses a bank draft to cover the back taxes of Client. Lawyer does so to gain an advantage for Client under the tax laws by providing a basis for arguing against the accrual of penalties for continued nonpayment of taxes. Neither Lawyer's letter nor the bank draft reveals the identity of Client.... In a grand-jury proceeding investigating Client's past failure to pay taxes, Lawyer cannot be required to testify concerning the identity of Client because, on the facts of the Illustration, that testimony would by reasonable inference reveal a confidential communication from Client, Client's communication concerning Client's nonpayment of taxes.

> RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 69 cmt. g, illus. 6 (2000).

#### d. *In Camera* Judicial Review

■ After careful *in camera* judicial review, the Court identified specific descriptions of legal services which implicate confidential communications between the clients and the attorneys. Those will be redacted in accordance with the recommendations of our special master, Senior Judge Kelley. The general descriptions of legal services, however, do not implicate confidential communications covered by the privilege. This information will be released.

Regarding the identities of the clients, it is clear that the name of one, Robert J. Mellow, is already in the public domain. Indeed, he was specifically referenced in one request. Therefore, in accordance with the general rule that the attorney-client privilege does not protect client names, no redaction of his name is appropriate.

■ As to the other four clients, we are mindful of the approach taken by our Supreme Court in *Chmiel* and by our Superior Court in *Slusaw:* if the invoices contain any references to confidential communications, those references will be redacted. Having approved those redactions and thereby removed all references to confidential communications from the invoices, we conclude that the Senate did not show "a strong probability that [further] disclosure would implicate [the] client in [the] criminal activity for which client sought legal advice." *Chmiel,* 585 Pa. at 599, 889 A.2d at 531–32. Accordingly, we conclude the general rule applies; thus, the names of the other four clients are not protected by the attorney-client privilege, and redaction of the names is not appropriate.

#### 3. Waiver

■ For reasons described above, it is useful to examine the position of the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS as to those persons covered by the attorney-client privilege. The purpose of this inquiry is to determine whether the involvement of the Chief Clerk of the Senate in receipt and payment of legal invoices for members and employees under the COMO Policy works a waiver of the attorney-client privilege.

The topic is generally addressed by Section 70 of the Restatement, titled "Attorney–Client Privilege-'Privileged Persons.' " Privileged persons include agents of either the client or the lawyer who facilitate communications between them and agents of the lawyer who facilitate the representation. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 70 (2000). Comment e provides in part that "If the third person is an agent for the purpose of the privilege, communications through or in the presence of that person are privileged; if the third person is not an agent, then communications are not in confidence ... and are not privileged." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 70 cmt. e (2000).

Comment f addresses a client's agent for communications. One such agent is described as follows (with emphasis added):

> The privilege applies to communications to and from the client disclosed to persons who hire the lawyer as an incident of the lawyer's engagement. Thus, the privilege covers communications by a client-insured to an insurance-company investigator who is to convey the facts to the client's lawyer designated by the insurer, as well as *communications from the lawyer for the insured to the insurer in providing a progress report or discussing litigation strategy or settlement.* Such situations must be distinguished from communications by an insured to an insurance investigator who

will report to the company, to which the privilege does not apply.

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 70 cmt. f (2000).

Here, pursuant to the COMO Policy, the Senate hires the lawyer for the member or employee. Indeed, contracts for legal services are formalized with an engagement letter signed by both the Senate and the attorney or law firm providing services. R.R. at 62a; see, e.g., R.R. at 105a–06a. The attorney or law firm is required to submit periodic invoices to be paid. R.R. at 63a–64a. Thus, the invoices involve communications in the nature of a progress report from the lawyer incident to the lawyer's engagement made to persons who hired the lawyer. Under these circumstances, we have no difficulty finding that the Senate officers and staff who administer the COMO Policy function as the client's agents for communications. We therefore conclude that confidential communications through those persons are privileged. As a result, we reject Levy's waiver argument.

### D. Conclusion

For the foregoing reasons, we affirm in part and reverse in part the final decision of the Senate Appeals Officer. We reverse as to the names of the clients and, in accordance with the recommendations of our special master, as to general descriptions of legal services. Consequently, those redactions cannot stand. However, in accordance with the recommendation of our special master, we affirm as to the specific descriptions of legal services that implicate confidential communications.

Judges COHN JUBELIRER and LEAVITT did not participate in the decision in this case.

### ORDER

**AND NOW,** this 6th day of October, 2011, after argument on May 11, 2011, and after in camera judicial review by the special master on June 22, 2011, it is **ORDERED** and **DECREED** as follows:

The report of the special master, filed UNDER SEAL on July 25, 2011, is **UNSEALED,** and shall be docketed by the Chief Clerk.

The Final Determination of the Senate Appeals Officer is **AFFIRMED in part and REVERSED in part.** The Determination is **REVERSED** as to the names of clients and, in accordance with the recommendations of our special master, as to some of the general descriptions of legal services. The redactions of these items cannot stand. The Determination is **AFFIRMED,** in accordance with the recommendation of our special master, as to specific descriptions of legal services that implicate confidential communications. These redactions shall continue.

### APPENDIX

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

MARC LEVY, Petitioner

v.

SENATE OF PENNSYLVANIA, CHIEF CLERK'S OFFICE, Respondent.

No. 2222 CD 2010

### AFFIDAVIT OF C.J. HAFNER, ESQUIRE

I, C.J. Hafner, Esquire, being duly sworn, hereby state:

1. I am Chief Counsel to the Pennsylvania Senate Democratic Caucus (the "Caucus"). I have knowledge of the matters set forth in this Affidavit.

2. As Chief Counsel to the Caucus, I am responsible for reviewing, approving and processing payment of all bills, contracts and payment records related to the hiring of any outside lawyer or law firm to represent any current or former members and employees of the Caucus.

3. As such, I have direct knowledge concerning the records requested and produced to Petitioner in the above-captioned matter related to the five clients who, pursuant to the Senate Committee on Management Operations ("COMO") Policy for the Payment for Legal Services, were provided with outside counsel to advise them.

4. With regard to each of the five clients for which records were produced to Petitioner, the redacted portions of the records contain communications which were made without the presence of strangers and they were made not for the purpose of committing a crime or tort.

5. These redactions were limited and confined to only client identity and the purpose or reasons why various attorneys were engaged in order to protect information subject to the attorney-client privilege, the work product privilege, grand jury secrecy rules and the "criminal investigation" exception set forth in Section 708(b)(16) of the Right–to–Know Law. *See* 65 P.S. §§ 67.305(b), 67.706, 67.708(b)(16), 67.708(c).

6. Each of the five clients reasonably expected that their identities and the purpose or reasons why they engaged their attorneys would be protected, they had a legitimate expectation of confidentiality and privacy in dealing with their respective counsel and they made no indication of any intent to waive any applicable privileges.

7. With regard to any additional records requested by Petitioner, all responsive records have already been provided to Petitioner and no further records exist.

8. I hereby affirm that the above and foregoing representations are true and correct to the best of my knowledge and belief. I understand that this Affidavit is made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsifications to authorities.

/s/

C.J. Hafner, Esquire

COUNTY OF DAUPHIN

COMMONWEALTH OF PENNSYLVANIA

Subscribed and sworn to before me this 8th day of June, 2011.

/s/

Notary Public

### APPENDIX

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marc Levy, Petitioner

v.

Senate of Pennsylvania, Respondent

No. 2222 C.D. 2010

Heard: June 23, 2011

### UNDER SEAL

BEFORE: HONORABLE JAMES R. KELLEY, SENIOR JUDGE, SITTING AS SPECIAL MASTER FOR *IN CAMERA* REVIEW OF REDACTED DOCUMENTS IN RESPONSE TO RIGHT TO KNOW REQUEST

TO THE JUDGES OF THE *EN BANC* PANEL

The instant matter involves the Right–to–Know Law (Law)[1] appeal from a par-

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

tial denial (redaction) of legislative documents of Respondent Senate of Pennsylvania. Pursuant to the order of this Court dated May 31, 2011, this matter was referred to the undersigned as a Special Master to conduct an *in camera* review of the unredacted legislative documents. The redacted information includes the names of clients and descriptions of legal services in engagement letters, service purchase contracts, and invoices presented to Respondent for approval and reimbursement. The purpose of the *in camera* review was to determine whether the redacted information was shielded by the attorney-client privilege as claimed by Respondent.

The *in camera* review was conducted on June 23, 2011. The review process began with opening statements made in the presence of counsel for both parties. Counsel for Petitioner was then excused from the courtroom. Upon her exit, the Special Master conducted *ex parte in camera* review with Counsel for Respondent present. Respondent furnished the Special Master with a binder containing a copy of the redacted and unredacted documents. The Special Master accepted the binder under seal. The Special Master reviewed each page of the unredacted documents, compared them to the redacted copies, and permitted Counsel for Respondent the opportunity to defend each redaction. The Special Master is guided by the principles articulated by this Court's *en banc* panel. The following is my report and ruling concerning whether the exemptions claimed by Respondent were properly asserted.

### 1. Client Identity

The redacted documents pertain to legal services provided to five clients who are or were employed by the Senate of Pennsylvania. Respondent's Counsel conceded that the name of one of the clients, Senator Robert J. Mellow, should not be redacted because the legal action involving the Senator is in the public domain. The report reflects this concession. As to the remaining four clients, Counsel defended the redaction under the attorney-client privilege arguing that one can deduce the purpose for which the various attorneys were engaged and the nature of services provided by virtue of the client's identity and the public scandals associated with the Senate. The issue of whether the client identities should be shielded under the attorney-client privilege is a question of law policy to be determined by the *en banc* panel, not the Special Master.

### 2. Description of Legal Services

With regard to the description of legal services provided, Counsel argued that the description reveals enough information that one could readily ascertain legal strategy and details of the investigation such as would reveal confidential communications shared by attorney and client. To the extent that the documents specify the issues or laws researched by the attorneys, specific services provided and the names of individuals with whom the attorneys communicated, the Special Master agrees that such information has the potential to reveal the confidential communications shared by attorney and client, the motive of the client in seeking representation and litigation strategy, and is privileged. However, to the extent that the redacted information relates to the general nature of the services performed, e.g., memo, telephone call, research, such general descriptions of the work performed are not subject to the attorney-client privilege and are not entitled to redaction.

3. Report

The Special Master, therefore, recommends that the Court sustain Respondent's claim of attorney-client privilege in part. For the convenience of the *en banc* panel and the parties, the chart below delineates the documents under review by the page number in the Supplemental Reproduced Record (S.R.R.), corresponding tab number in the Certified Record (C.R.), pertinent comments regarding the redactions, and the ruling for each redaction. The Special Master has identified the pages where the client identities have been redacted with an indication that judgment has been reserved for *en banc* panel. Attached to this report as Appendix A is a copy of the documents reviewed by the Special Master with the recommended redactions highlighted.

| S.R.R. | C.R. | Comments | Ruling |
|--------|------|----------|--------|
| 63a | 4 | Respondent conceded that the name of the client and case is in the public domain. | Reverse redaction per concession |
| 65a | 5 | Respondent conceded that the name of the client and case is in the public domain. | Reverse redaction per concession |
| 73a | 8 | First redaction following "OUR FILE:", Respondent conceded that the name of the client and case is in the public domain. | Reverse redaction per concession |
| | | Second redaction following "JFT", attorney-client privilege applies to specific description of services provided; general references to the nature of work billed (e.g., "Receipt and review of letter brief", "Legal Research", and "Letter") are not protected by attorney-client privilege. | Reverse redaction in part |
| 75a | 11 | First redaction following "OUR FILE:", Respondent conceded that the name of the client and case is in the public domain. | Reverse redaction per concession |
| | | Second redaction following "EHF", attorney-client privilege applies to specific description of services provided; general references to the nature of work billed (e.g., "Review/analyze correspondence"; etc.;) are not protected by attorney-client privilege. | Reverse redaction in part |
| 78a | 13 | First redaction following "OUR FILE:", Respondent conceded that the name of the client and case is in the public domain. | Reverse redaction per concession |
| | | Second redaction following "JFT", attorney-client privilege applies to specific description of services provided; general references to the nature of work billed (e.g., "Letter"; "Review letter"; Legal research", etc.;) are not protected by attorney-client privilege. | Reverse redaction in part |
| 81a–82a | 15 | First redaction following "OUR FILE:", Respondent conceded that the name of the client and case is in the public domain. | Reverse redaction per concession |
| | | Second redaction following "JFT", which continues to second page, attorney-client privilege applies to specific description of services provided; general references to the | Reverse redaction in part |

| S.R.R. | C.R. | Comments | Ruling |
|---|---|---|---|
| | | nature of work are not protected by attorney-client privilege. | |
| 84a–85a | 18 | First redaction following "OUR FILE:", Respondent conceded that the name of the client and case is in the public domain. | Reverse redaction per concession |
| | | Second redaction following "JFT", which continues to second page, attorney-client privilege applies to specific description of services provided; general references to the nature of work are not protected by attorney-client privilege. | Reverse redaction in part |
| 87a | 21 | First redaction following "OUR FILE:", Respondent conceded that the name of the client and case is in the public domain. | Reverse redaction per concession |
| | | Second redaction following "JFT", attorney-client privilege does not apply. | Reverse redaction |
| 90a | 23 | First redaction following "OUR FILE:", Respondent conceded that the name of the client and case is in the public domain. | Reverse redaction per concession |
| | | Second redaction following "JFT", attorney-client privilege only applies to the name of the person from whom the telephone call was received; otherwise the remainder is not protected by attorney-client privilege. | Reverse redaction in part |
| 91a | 44 | Redaction conceals client identity | Reserved |
| **S.R.R.** | **C.R.** | **Comments** | **Ruling** |
| 94a | 45 | Redaction conceals client identity<br>The nature of services rendered is protected by attorney-client privilege | Reserved<br>Affirm redaction |
| 95a | 46 | Redaction conceals client identity<br>The issues identified are protected by attorney-client privilege. | Reserved<br>Affirm redaction |
| 96a | 47 | Redaction conceals client identity | Reserved |
| | | The issues identified are protected by attorney-client privilege. | Affirm redaction |
| 98a | 48 | Redaction conceals client identity<br>The issues identified are protected by attorney-client privilege. | Reserved<br>Affirm redaction |
| 100a | 51 | Redaction conceals client identity<br>The issues identified are protected by attorney-client privilege. | Reserved<br>Affirm redaction |
| 102a | 53 | Redaction conceals client identity<br>The issues identified are protected by attorney-client privilege. | Reserved<br>Affirm redaction |
| 104a | 55 | Redaction conceals client identity<br>The issues identified are protected by attorney-client privilege. | Reserved<br>Affirm redaction |
| **S.R.R.** | **C.R.** | **Comments** | **Ruling** |
| 105a | 61 | Redaction conceals client | Reserved |
| 108a | 57 | Part of the first redaction conceals client identity | Reserved |

| | | | |
|---|---|---|---|
| | | Later half identifies issues and is protected by attorney-client privilege. | Affirm redaction |
| | | Second redaction is protected by attorney-client privilege only to the extent that it relates to the legal; otherwise, general references to the nature of work billed (e.g., "Attendance at meetings", "telephone conferences", "research; receipt and review of [REDACT] information, articles, documents") are not protected by attorney-client privilege. | Reverse in part |
| 110a | 57 | Redaction conceals client identity | Reserved |
| | | The issues identified are protected by attorney-client privilege. | Affirm redaction |
| 112a | 59 | Part of the first redaction conceals client identity | Reserved |
| | | Later half identifies issues and is protected by attorney-client privilege. | Affirm redaction |
| | | With regard to the second redaction, attorney-client privilege only applies to the specific description of review and analysis performed; general references to the nature of work are not protected by attorney-client privilege (e.g. "review and analysis of [REDACT] matter . . ."). | Reverse redaction in part |
| 113a | 59 | Redaction conceals client identity | Reserved |
| | | The issues identified are protected by attorney-client privilege. | Affirm redaction |
| 114a | 25 | Redaction conceals client identity | Reserved |
| | | The motive of the client in seeking representation is protected by attorney-client privilege. To the extent the general legal services covered by the contract are listed, such are not protected. | Reverse redaction in part |
| 115a–116a | 26 | Redaction conceals client identity | Reserved |
| | | The motive of the client in seeking representation and the nature and scope of the representation is protected by attorney-client privilege. To the extent the general legal services covered by the contract are listed, such are not protected. | Reverse redaction in part |
| 122a–124a | 34 | Redaction at top of second and third page conceals client identity | Reserved |
| | | Specific nature of representation, motive of client in seeking representation, legal strategy and research performed are protected by attorney-client privilege; general legal services are not protected. | Reverse redaction in part |
| 128a–132a | 31 | Redaction at top of second, third and fourth page conceals client identity | Reserved |
| | | Specific nature of representation, motive of client in seeking representation, legal strategy and research performed are protected by attorney-client privilege; general legal services are not protected. | Reverse redaction in part |

| | | | |
|---|---|---|---|
| 135a–137a | 30 | Redaction at top of second and third page conceals client identity | Reserved |
| | | Specific nature of representation, motive of client in seeking representation, legal strategy and research performed are protected by attorney-client privilege; general legal services are not protected. | Reverse redaction in part |
| 138a–139a | 29 | Redaction at top of second page conceals client identity | Reserved |
| | | Specific nature of representation, motive of client in seeking representation, legal strategy and research performed are protected by attorney-client privilege; general legal services are not protected. | Reverse redaction in part |
| 140a–141a | 40 | Redaction conceals client identity | Reserved |
| | | Redactions conceal specific nature of representation and are protected by attorney-client privilege. | Affirm redaction |
| 143a | 42 | Redaction conceals client identity | Reserved |
| 144a | 41 | Redactions conceal client identity | Reserved |
| 145a–146a | 41 | Redaction conceals client identity | Reserved |
| | | Redactions conceal specific nature of representation and motive of client seeking representation and are protected by attorney-client privilege. | Affirm redaction |

This report and the binder containing the redacted and unredacted documents, as well as the transcript of the June 23, 2011 hearing, are being filed under seal and will remain so until further order of Court.

JAMES R. KELLEY, Senior Judge as Special Master.

Date: July 25, 2011