Sam Janesch and Angela
Couloumbis,                  :
                 Petitioners     :    No.   142 C.D. 2022
                                     :
              v.                  :    Argued: December 12, 2022
                                       :
Pennsylvania House of           :
Representatives,              :
                 Respondent     :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE MICHAEL H. WOJCIK, Judge
                   HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE McCULLOUGH                     FILED: July 18, 2023

In this Right-to-Know Law (RTKL)[1] appeal, Petitioners Sam Janesch and Angela Couloumbis (Requesters) petition for review of the January 19, 2022 final determination of Anthony C. Aliano, Esq., the Appeals Officer of Respondent Pennsylvania House of Representatives (House) (House AO). The House AO's final determination affirmed the House's partial denial of Requesters' RTKL request seeking disclosure of documents related to the retention of outside legal counsel by the House, its members, and its employees. The House produced responsive documents but made redactions that Requesters challenged before the House AO. The House AO affirmed, and Requesters now petition this Court for review. Upon review, we affirm.[2]

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[2] This is one of two related appeals filed by Requesters regarding RTKL requests they submitted separately to each of the two houses of the Pennsylvania General Assembly. The other

**(Footnote continued on next page…)**

# I. FACTS AND PROCEDURAL HISTORY

The material facts are not disputed. On October 15, 2021, Requesters submitted an e-mail RTKL request to the House seeking documents in the following four categories: (1) invoices, bills, and other financial documents reflecting payment for legal work performed by outside law firms or individual lawyers for the House or its employees; (2) engagement or retainer letters regarding this legal work; (3) expense reports showing payments to law firms or individual lawyers for this legal work; and (4) any other documents that identify the House's legal engagements with outside law firms or lawyers (Request). The Request sought documents for the period between January 1, 2021, and October 15, 2021. (Reproduced Record (R.R.) 002a.) On October 22, 2021, pursuant to subsections 902(a)(1), (4), and 7[3] of the RTKL, the House invoked a 30-day extension to respond to the Request. (R.R. 004a.)

On November 22, 2021, Brooke I. Wheeler, the House's Chief Clerk and Open Records Officer (ORO), granted the Request, in part, and produced in electronic format over 600 pages of responsive documents. The ORO denied the Request, in part, by redacting[4] from the production personal financial information and information allegedly protected by the attorney-client and work product privileges. (R.R. 004a-005a.) The production included engagement letters, invoices, and expense reports from

---

appeal is *Couloumbis v. Senate of Pennsylvania* (Pa. Cmwlth., No. 160 C.D. 2022, filed July 18, 2023). The two cases have not been consolidated, but they were argued seriately and are being decided together.

[3] 65 P.S. § 67.902(a)(1), (4), (7). These subsections permit a 30-day extension of the response deadline where redaction or legal review is required or where the extent or nature of the request precludes a response within the required period. *See also* Section 902(b)(2) of the RTKL, 65 P.S. § 67.902(b)(2).

[4] Redactions of records otherwise subject to disclosure are deemed denials of a RTKL request. *See* Section 706 of the RTKL, 65 P.S. § 67.706.

the House Chief Clerk's office, the House Republican Caucus, and the House Democratic Caucus.[5]  The House did not provide a privilege log or index of its redactions, but instead offered the following rationale:

> All privileged redactions were performed in accordance with the guidance provided by the Commonwealth Court of Pennsylvania in [*Levy v. Senate of Pennsylvania*], 94 A.3d 436 (Pa. Cmwlth. 2014) [*Levy III*].  General descriptions of work and references to publicly-available information have been left unredacted.  However, information which would reveal attorney mental impressions, theories, notes, strategies, research and the like created in the course of the attorney's duty has been redacted, as well as descriptions of legal services that address the [House's] motive for seeking counsel, legal advice, strategy, or other confidential communications.  Likewise, personal financial information had been redacted from sections of the records relating to billing and/or payment in accordance with section[ ] 708(b)(6) and [ ](c) of the [RTKL, 65 P.S. § 67.708(b)(6), (c)].

(R.R. 005a.) (internal quotations and footnotes omitted).[6]

On December 14, 2021, Requesters appealed the ORO's decision to the House AO.  (R.R. 008a.)  In their appeal, Requesters challenged only those redactions made pursuant to the attorney-client and work product privileges, arguing that the redactions of subject matters from engagement letters and invoices was not justified

---

[5] The House produced most of the responsive documents on November 22, 2021.  A supplemental production containing 13 pages of additional documents was sent by e-mail on December 7, 2021.  (Petition for Review (PFR), Ex. A, p. 2 n.5; R.R. 245a.)

[6] Requesters did not include the House's document production in the Reproduced Record. They included only samples of redacted documents that were appended to their appeal to the House AO.  The Court reviewed the remainder of the production contained in the Original Record (O.R.) received from the House.

under either of those privileges and contravened companion provisions of the Sunshine Act.[7] Requesters also argued that the House's failure to provide an index or privilege log made it impossible to determine whether either of the asserted privileges legitimately was invoked for any of the redactions. Requesters pointed out that the nature and scope of the redactions were not consistent with prior productions made by the House in response to RTKL requests for similar documents from 2019 and 2020.[8] *Id.* Requesters thus requested that the House AO direct that all of the redactions be removed or, in the alternative, that the House AO conduct *in camera* review and a hearing to determine the applicability of the asserted privileges to each of the House's redactions.

Before the House AO, the House relied on this Court's decisions in *Levy v. Senate of Pennsylvania*, 34 A.3d 243 (Pa. Cmwlth. 2011) (*Levy I*), *reversed, in part*, 65 A.3d 361 (Pa. 2013) (*Levy II*) and *Levy III*, and the Pennsylvania Supreme Court's decision in *Levy II*, to argue that its redactions were supported by both the attorney-client and work product privileges. In support, the House submitted the affidavits of (1) Daniel W. Coleman, "CORE"[9] Legal Counsel for the House, on behalf of the House's Chief Clerk/ORO (Coleman Affidavit) (R.R. 249a-54a); (2) Charlene A. Bashore, the Open Records Officer of the House Republican Caucus (Bashore

---

[7] 65 Pa. C.S. §§ 701-716.

[8] Requesters attached to their appeal a sample redacted engagement letter and approximately 60 additional pages of documents, mostly invoices, produced by the House. They also attached approximately 140 pages of redacted documents produced in response to Requesters' prior RTKL request for the same categories of documents from prior years. The House made similar redactions in that production, and Requesters challenged the redactions before the House AO. In a decision nearly identical to its decision in this matter, the House AO affirmed. *See* R.R. 271a-84a. Requesters did not appeal to this Court.

[9] "CORE" is an alternative term for the House's Chief Clerk.

4

Affidavit) (R.R. 256a-61a); and (3) Matthew S. Salkowski, Senior Legal Counsel to the House Democratic Caucus (Salkowski Affidavit) (R.R. 264a-68a) (together, Affidavits).[10]

The Affidavits each include, among other items, the following:

1) The affiants' names, positions, and relevant job responsibilities;

2) The affiants' familiarity with the Request;

3) The details of the searches each performed for responsive documents;

4) The individual attorneys and law firms who generated responsive documents;

5) Each affiant's familiarity with the *Levy* decisions;

6) The specific categories, subjects, and topics of information that were redacted from the responsive documents, including in the narrative entries of invoices;

7) The specific rationale for why narrative entries were redacted under both the attorney-client and work product privileges; and

8) The reasons why *in camera* review and the production of a privilege log would be unnecessary and unduly burdensome.

(R.R. 249a-69a.) The House contended that both *in camera* review and the production of a privilege log were unnecessary and overly burdensome because the Affidavits sufficiently explained the bases for all of the redactions. Regarding the Sunshine Act,

---

[10] Although the House AO's decision references four affidavits, the Salkowski Affidavit is mentioned twice. We assume this was a typographical error. (PFR, Ex. A., at 7.)

the House argued that it was inapplicable to a RTKL request and that, in any event, nothing in the redactions offended the Sunshine Act in principle. The House acknowledged a degree of variation between the redactions made in this matter and those made in prior productions responding to very similar RTKL requests. Nevertheless, the House argued that some variation in redactions is expected because of slightly different interpretations of the *Levy* decisions by individual redactors.

By decision issued on January 19, 2022, the House AO affirmed the ORO's partial denial of the Request. (PFR, Ex. A.) The House AO rejected each of Requesters' challenges to the redactions, concluding that (1) the Affidavits provided sufficient and detailed information to justify the redactions, (2) *in camera* review and the production of a privilege log were unnecessary and would be unduly burdensome given the sufficiency of the Affidavits, and (3) the redactions in prior RTKL productions were never challenged and therefore are immaterial to this matter.[11] *Id.* at 10-14. Requesters then petitioned for review in this Court.

## II.     ISSUES PRESENTED

Requesters present two issues in their PFR: (1) whether the House produced sufficient evidence establishing that the attorney-client and work product privileges justify its redactions, and (2) whether the RTKL requires a legislative agency like the House to redact subject matters from attorney engagement letters and invoices. The House contends, as it did before the House AO, that its redactions are justified under both the attorney-client and work product privileges and adequately are supported by the Affidavits submitted to the House AO. The House also contends that it properly redacted the subject matters from a few of the produced documents to preserve the attorney-client privilege.

---

[11] The AO did not address Requesters' argument under the Sunshine Act.

6

## III.   DISCUSSION

### A.   Standard and Scope of Review

When deciding questions of law under the RTKL, such as whether certain information is exempt from disclosure by the attorney-client or work product privileges, our scope of review is plenary and our standard of review is *de novo*. *Levy I*, 34 A.3d at 246. In reviewing matters under section 1301 of the RTKL, 65 P.S. § 67.1301 (pertaining to Commonwealth, legislative,[12] and judicial agencies), "we act in our appellate jurisdiction, but we independently review the appeals officer's orders, and we may substitute our own findings of fact." *Id.* (citing *Bowling v. Office of Open Records*, 990 A.2d 813, 818 (Pa. Cmwlth. 2010) (*en banc*)). *See also Padgett v. Pennsylvania State Police*, 73 A.3d 644, 646 n.3 (Pa. Cmwlth. 2013).

### B.   Applicable Law

#### 1.   Privilege Generally

Pursuant to section 701(a) of the RTKL, legislative or financial records generally are accessible to the public unless otherwise provided by law. 65 P.S. § 67.701(a). Similarly, legislative records[13] in the possession of a legislative agency are presumed to be available to the public unless exempted under section 708 of the RTKL, 65 P.S. § 67.708, or any other Federal or State law, regulation, or judicial order or decree, or are protected by a privilege. Section 305(b) of the RTKL, 65 P.S. § 67.305(b). Privileged documents also are excluded from the definition of "public record" under section 102 of the RTKL, 65 P.S. § 67.102. Pertinent here, "privilege" is defined in the RTKL to include the attorney-client and work product privileges. *Id.* Although an agency has some discretion under the RTKL to release otherwise exempt

---

[12] The House is a "legislative agency." Section 102 of the RTKL, 65 P.S. § 67.102.

[13] Legislative records include financial records. 65 P.S. § 67.102.

records, it lacks discretion to release a privileged record. Section 506(c)(2) of the RTKL, 65 P.S. § 67.506(c)(2).

Where an agency asserts a privilege, the agency bears the burden of proof to demonstrate by sufficient facts that the privilege applies. *Levy I*, 34 A.3d at 249 (citing, in part, *Department of Transportation v. Office of Open Records*, 7 A.3d 329, 335 (Pa. Cmwlth. 2010)). *See also* section 708 (a)(1) of the RTKL, 65 P.S. § 67.708(a)(1) ("The burden of proving that a record of a Commonwealth agency or local agency is exempt from public access shall be on the Commonwealth agency or local agency receiving a request by a preponderance of the evidence."); Section 903(2) of the RTKL, 65 P.S. § 67.903(2) (where an agency denies a RTKL request, in whole or in part, the agency must state in writing the "specific reasons for the denial, including a citation of supporting legal authority"). A preponderance of the evidence is such evidence as would lead a factfinder to find that the existence of a contested fact is more probable than the nonexistence of the contested fact. *Pennsylvania Office of Attorney General v. Bumsted*, 134 A.3d 1204, 1210 n.12 (Pa. Cmwlth. 2016). Further, given the overarching purposes of the RTKL to provide access to government information and increase official accountability, "in determining whether a record is exempt from disclosure under the RTKL, exemptions from disclosure must be narrowly construed so as to not frustrate the remedial purpose of the RTKL." *Office of the District Attorney of Philadelphia v. Bagwell*, 155 A.3d 1119, 1130 (Pa. Cmwlth. 2017) (citation omitted) (*Bagwell 2017*).

### 2. The *Levy* Decisions

Because the parties rely heavily on the several *Levy* decisions of this Court and the Pennsylvania Supreme Court, we first review them generally. All three decisions involve the same set of facts and the same two RTKL requests. In *Levy I*, we

considered the appeal of Marc Levy, an Associated Press Member, from the decision of the Pennsylvania Senate's (Senate) Open Records Appeals Officer. Levy requested documents in categories very similar to those involved in this case: bills, contracts, and payment records relating to the retention of outside counsel by one identified senator and any other current or former members of the Senate Democratic Caucus. The Senate produced responsive records with substantial redactions of both client identities and descriptions of the legal work provided, relying on the attorney-client privilege to justify the redactions. Levy appealed. Before the Senate Appeals Officer, the Senate asserted additional reasons for the redactions, including the attorney work product privilege and the grand jury and criminal investigation exemptions. The Senate Appeals Officer ultimately concluded that the Senate had not provided sufficient information to satisfy all of the elements of the attorney-client privilege and accordingly permitted the Senate to supplement the record with affidavits or other additional evidence. Levy appealed to this Court before the Senate provided any further evidence. *Levy I*, 34 A.3d at 244-45.

This Court ordered *in camera* review of the Senate's redactions by Senior Judge James R. Kelley, acting as special master (Special Master). After receiving the Special Master's report and recommendations, an *en banc* panel of this Court concluded that client identities and most general descriptions of legal services were not protected by the attorney-client privilege. We further concluded, however, that specific legal descriptions that would reveal confidential communications between attorney and client appropriately were redacted. We finally concluded that the Senate had waived all alternative legal grounds supporting the redactions because it raised them for the first time before the Senate Appeals Officer. We accordingly affirmed, in part, and reversed, in part, the Senate Appeals Officer's final determination. *Id.* at 250-52, 255.

9

The Pennsylvania Supreme Court granted the Senate's allocatur petition to consider three issues: (1) whether client identities are protected by the attorney-client privilege, (2) whether descriptions of legal services are protected by the attorney-client privilege, and (3) whether an agency waives grounds for withholding records that were not asserted in its initial written denial. *Levy II*, 65 A.3d at 367. The Pennsylvania Supreme Court ultimately affirmed this Court's decision that client identities and general descriptions of legal services are not protected by the attorney-client privilege. The Court reversed, however, our determination that the Senate had waived its alternative grounds for non-disclosure. It therefore remanded the case to this Court for our consideration of whether the attorney work product privilege and grand jury secrecy and criminal investigation exemptions applied to justify the Senate's redactions. *Id.* at 383. On remand, in pertinent part, we concluded that the attorney work product privilege did not protect general descriptions of legal services from disclosure. *Levy III*, 94 A.3d at 444. Specific descriptions of legal services, however, as we concluded in *Levy I* and the Supreme Court affirmed in *Levy II*, remained protected by the attorney-client privilege. *Id.* at 444 n.9; *Levy II*, 65 A.3d at 373.

### 3. Attorney-Client Privilege

The Pennsylvania Supreme Court in *Levy II* summarized as follows the attorney-client privilege, particularly as it relates to the purposes of the RTKL:

> [The Pennsylvania Supreme Court] has repeatedly noted that the attorney-client privilege is deeply rooted in our common law and is the most revered of our common law privileges. The General Assembly has defined attorney-client privilege identically for purposes of criminal and civil law . . . .[14] We

---

[14] *See* 42 Pa. C.S. §§ 5916, 5928 ("[In a criminal or civil matter,] counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall **(Footnote continued on next page…)**

10

recently observed that the purpose of the attorney-client privilege is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. We acknowledged, however, that the attorney-client privilege is often in tension with the truth-determining process of the justice system, and, in this case, with the RTKL's goal of government transparency. In balancing these competing purposes, we note that not all information passed between client and attorney is privileged, but rather the privilege is limited to communications related to the legal advice sought by the client.

*Levy II*, 65 A.3d at 368-69 (internal citations and quotations omitted). *See also Levy I*, 34 A.3d at 248. Further,

the determination of the applicability of the attorney-client privilege does not turn on the category of the information, such as a client's identity or address, or the category of a document, such as whether it is an invoice or fee agreement. Instead, the relevant question is whether the content of the writing will result in disclosure of information otherwise protected by the attorney-client privilege. For example, descriptions of legal services that address the client's motive for seeking counsel, legal advice, strategy, or other confidential communications are undeniably protected under the attorney[-]client privilege. In contrast, an entry that generically states that counsel made a telephone call for a specific amount of time to the client is not information protected by the attorney-client privilege but, instead, is subject to disclosure under the specific provisions of the RTKL.

---

the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.").

11

*Levy II*, 65 A.3d at 373 (internal citation omitted).[15] To establish the application of the attorney-client privilege, an agency must demonstrate the following:

> (1) The asserted holder of the privilege is or sought to become a client;
>
> (2) The person to whom the communication was made is a member of the bar of a court, or his subordinate;
>
> (3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort; and
>
> (4) The privilege has been claimed and is not waived by the client.

*Pennsylvania Department of Education v. Bagwell*, 114 A.3d 1113, 1123-24 (Pa. Cmwlth. 2015) (citing, in part, *Nationwide Mutual Insurance Company v. Fleming*,

---

[15] Senior Judge Kelley, Special Master in *Levy I*, concluded as follows regarding whether and to what extent descriptions of legal services may be redacted under the attorney-client privilege:

> To the extent that the documents specify the issues or laws researched by the attorneys, specific services provided and the names of individuals with whom the attorneys communicated, the Special Master agrees that such information has the potential to reveal the confidential communications shared by attorney and client, the motive of the client in seeking representation and litigation strategy, and is privileged. However, to the extent that the redacted information relates to the general nature of the services performed, e.g., memo, telephone call, research, such general descriptions of the work performed are not subject to the attorney-client privilege and are not entitled to redaction.

*Levy I*, 34 A.3d at 257. *See also Levy II*, 65 A.3d at 373 ("[W]e approve . . . Special Master Judge Kelley's careful line-by-line analysis . . . .").

924 A.2d 1259 (Pa. Super. 2007), *aff'd by an equally divided court*, 992 A.2d 65 (2010)).

### 4. Work Product Privilege

This Court, in *Levy III*, described the attorney work product privilege[16] and its interplay with the RTKL as follows:

> Application of the attorney work[ ]product [privilege] is described in [Pennsylvania Rule of Civil Procedure (Pa. R.Civ.P.)] 4003.3, which precludes "disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories." In the RTKL context, the [privilege] protects the mental impressions, theories, notes, strategies, research and the like created by an attorney in the course of his or her professional duties, particularly in anticipation or prevention of litigation from disclosure.
>
> The work[ ]product [privilege], while closely related to the attorney-client privilege, provides broader protection. The [privilege] protects any material prepared by the attorney in anticipation of litigation, regardless of whether it is confidential. The underlying purpose of the work product [privilege] is to guard the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case. The purpose is not to shield mundane and uninforming entries in billing records, such as the bare fact that a telephone conference occurred.

*Levy III*, 94 A.3d at 446 (internal citations and most internal quotations omitted). *See also Heavens v. Pennsylvania Department of Environmental Protection*, 65 A.3d 1069, 1077 (Pa. Cmwlth. 2013). In considering the distinction between unprotected general

---

[16] This privilege often is referred to as the attorney work product "doctrine." We have referred to it herein as a "privilege" to be consistent with many of the references in the briefing and record.

descriptions of legal services and non-disclosable descriptions that would reveal protected information, we reasoned:

> Although the general descriptions such as drafting a memo, making telephone call, performing research, observing a trial, reflect work performed, without further detail[] they do not reveal an attorney's mental impressions, theories, notes, strategies, research and the like. Disclosure of the general tasks performed in connection with the fee charged reveals nothing about litigation strategy. They simply explain the generic nature of the service performed and justify the charges for legal services rendered. Where, as here, the taxpayers are footing the bill for the legal services, they are entitled to know the general nature of the services provided for the fees charged. Thus, we conclude such rote entries regarding the general nature of legal services performed are not entitled to protection under the work[ ]product [privilege].

*Levy III*, 94 A.3d at 444 (internal citations and footnote omitted).

### C.    Analysis

Requesters do not dispute that the attorney-client and work product privileges apply to RTKL requests for legislative records and may support redactions of privileged information.  They also do not argue that the House has made redactions of client identities or general descriptions of legal services in direct violation of the *Levy* decisions.  Rather, Requesters contend that the House has not adequately supported its redactions with evidence that either or both privileges apply to each redaction and that the RTKL does not categorically preclude the disclosure of the subject matters identified in outside attorney engagement letters and invoices.  We address Requesters' issues in reverse order for convenience of analysis.

#### 1.    Subject Matters

Requesters argue that the House and the House AO interpreted the *Levy* decisions too broadly to protect general descriptions of the subject matters of legal

14

work performed for the House by outside law firms. Requesters contend that subject matters in engagement letters and invoices *may* be protected by the attorney-client and work product privileges, but only, under *Levy II*, where the revelation of those subject matters would reveal the client's motive for seeking legal counsel, legal advice, strategy, or other confidential communications. Requesters argue that "[t]he public needs to know the general subject matter of the House's legal engagements" and that public scrutiny will be hamstrung if the House conceals "even the most basic, general information about its reasons for engaging outside attorneys." (Petitioners' Br. at 26.)

First, our review of the House's document production reveals that the vast majority of the subject matters contained in the House's invoices, comptroller expense reports, and engagement letters is *un*redacted.[17] For example, of the engagement letters produced, only one redacts the subject matter of the representation. (R.R. 14a.) All of the other engagement letters and hundreds of pages of invoices include the subject matters of the House's various retentions of outside legal counsel. Thus, and preliminarily, it is not altogether clear that Requesters have been deprived of "basic, general information" about the House's legal engagements. (Petitioners' Br. at 26.) Requesters have not identified specific redacted subject matters that they challenge, and we will not guess as to which ones Requesters argue are problematic.

Second, we read the *Levy* decisions to be quite clear about what may and may not be redacted from attorney invoices and engagement letters. General descriptions of legal services, e.g., that a lawyer made a telephone call, sent an e-mail, drafted a pleading, or sat in conference with other lawyers or the client are not

---

[17] As noted above, Requesters neither included in the Reproduced Record nor referenced or analyzed in their brief the bulk of the House's document production. Accordingly, so that we could conduct meaningful appellate review, this Court independently retrieved the Certified Record and reviewed and catalogued the entirety of the House's production.

protected. Specific descriptions of legal services that would divulge confidential client communications or an attorney's mental impressions, legal theories or analysis, notes, strategies, and the like, are protected. *Levy II*, 65 A.3d at 373; *Levy I*, 34 A.3d at 254; *Levy III*, 94 A.3d at 444. These are the only general categories of privileged information that the *Levy* decisions identify. Their application and the propriety of any redactions made on the grounds of privilege must be addressed on a case-by-case basis. Thus, whether subject matters in engagement letters and invoices may be redacted depends on whether their disclosure would compromise the protection of the confidential information identified above. If not, then the privileges do not apply and the subject matters must be disclosed.

Here, the House redacted a small number of subject matters from a single engagement letter and attorney invoices. They otherwise did not redact subject matters, and it therefore cannot be argued that the House is suggesting a broad, categorical rule that would protect all subject matters from disclosure. Of the few subject matters that were redacted, the House's Affidavits make clear that the redactions were made because those specific subject matters would reveal client motives for seeking counsel or some other category of protected information. Although we address the sufficiency of the Affidavits below, we conclude here that the House does not assert, nor do the *Levy* decisions provide for, a prophylactic rule either protecting or requiring the production of the subject matters of legal representation, whether contained in the subject line of an engagement letter, the body of an invoice, or elsewhere.[18] Requesters' suggestions to the contrary are without merit.

---

[18] Requesters' lengthy argument under the Sunshine Act therefore is inapposite. Although the Sunshine Act and RTKL are born of common objectives, the specific Sunshine Act provision relied upon by Requesters, namely, 65 Pa. C.S. § 708(b), has no application here. Under the Sunshine Act, **(Footnote continued on next page…)**

16

### 2. The Affidavits

We stated in *Bagwell 2017*:

> A local agency may provide affidavits to detail the search its RTKL officer conducted for documents responsive to a RTKL request and the justification, if applicable, for any exemption from public disclosure or privilege relied upon for denying a requester access to responsive documents. Relevant and credible testimonial affidavits may provide sufficient evidence in support of a claimed exemption; however, conclusory affidavits, standing alone, will not satisfy the burden of proof an agency must sustain to show that a requester may be denied access to records under the RTKL.

*Bagwell 2017*, 155 A.3d 1119 (citations omitted); *see also Heavens*, 65 A.3d at 1073. In *Pennsylvania Department of Education v. Bagwell*, 131 A.3d 638 (Pa. Cmwlth. 2016) (*Bagwell 2016*), we considered the validity and sufficiency of an affidavit submitted by the Department of Education (Department) to establish the applicability of the attorney-client and work product privileges to documents requested under the RTKL regarding the Gerald Sandusky investigation. 131 A.3d at 644. The Department did not review or produce any responsive documents, but, instead, submitted the affidavit of its former secretary, Ronald Tomalis (Tomalis Affidavit), in support of its

---

an agency generally may enter executive session for various purposes, including to "consult with its attorney or other professional advisor regarding information or strategy in connection with litigation or with issues on which identifiable complaints are expected to be filed." 65 Pa. C.S. § 708(a)(4). Section 708(b) requires an agency to announce the reason for its entry into executive session. 65 Pa. C.S. § 708(b); *Reading Eagle Co. v. Council of the City of Reading*, 627 A.2d 305, 306-07 (Pa. Cmwlth. 1993) (when entering executive session to discuss litigation, the agency must announce the parties, docket number, and court for existing lawsuits and the nature of the complaint for impending lawsuits prior to entering executive session; litigation strategy, settlement discussions, or potential claims need not be disclosed). The Sunshine Act, therefore, like the RTKL, protects privileged information and requires publication of basic information about an agency's legal involvements. Our decisions in *Levy* make similar distinctions that were applied by the House in making its redactions. Thus, even assuming that the Sunshine Act applied in this matter—and it does not—its provisions do not require a result contrary to that reached above.

privilege claims. *Id.* at 657. The Tomalis Affidavit generally tracked the elements of the privileges and stated that the responsive documents contained privileged communications and the mental impressions and opinions of attorneys in the Office of General Counsel. *Id.* at 657-58. We concluded that the Tomalis Affidavit was "conclusory and vague" and did not sufficiently establish that the unreviewed and unproduced documents were protected by the attorney-client or work product privileges. *Id.* at 658. Specifically, we concluded:

> Notably, the Department did not submit a privilege log to [the Office of Open Records (OOR)] or to this Court identifying the relevant documents. As a result, neither OOR nor this Court had sufficient information to evaluate the exemptions. This may be because the Department had not yet reviewed the records for applicability of exemptions and redaction as appropriate. We find it perplexing that the Department claims unspecified records are privileged while simultaneously admitting it did not review the records. The Tomalis Affidavit is conclusory and vague. It does not describe the records with any particularity as to how the privilege supports non-disclosure or redaction of the 644 pages of allegedly responsive records. For these reasons, we conclude the Department failed to establish the responsive records fall within the attorney-client privilege or the work product [privilege].

*Bagwell 2016*, 131 A.3d at 658 (citations omitted).

Here, the Affidavits are not analogous to those at issue in *Bagwell 2016*. All three of the House's affiants included specific factual material detailing their search for responsive documents, their knowledge of the *Levy* decisions, their (days-long) personal review of responsive documents, and the specific categories of items they redacted. This is not a situation where, as in *Bagwell 2016*, the responding agency guessed as to the responsive documents' contents and submitted an affidavit that merely tracked the elements of the relied-upon privileges. Although the House did not

18

submit a privilege log, no document was withheld in its entirety on the basis of privilege. The documents all have been produced and contain more than sufficient unredacted information to give ample context clues identifying the nature of the redacted information and the ground(s) upon which the redactions were made. Thus, we conclude that the Affidavits, coupled with the responsive documents themselves, adequately establish the applicability of the attorney-client and work product privileges to the House's redactions. *See Heavens*, 65 A.3d at 1076-77.

For the same reasons, we conclude that *in camera* review and the production of a privilege log are unnecessary. Although, as in *Levy I*, *in camera* review in certain circumstances is both available and helpful to this Court in deciding RTKL matters, we find that the documents produced by the House, together with the Affidavits, provide enough proof to establish the asserted privileges. The general purpose of *in camera* review and the production of a privilege log is to provide the requester and/or the Court with enough information to determine whether withholding or redacting was appropriate. We have the bulk of that information available to us in this case. Again, no single document was withheld in its entirety, and Requesters have not identified a specific subject matter that they challenge. Moreover, there is very little additional information to discover from the content of the redacted invoices. Accordingly, we decline Requesters' requests that we vacate the House AO's decision and remand for the production of a privilege log and *in camera* review.[19]

_____

[19] In the companion Senate case, unlike here, the Senate categorically redacted all subject matters from its document production and produced affidavits and a privilege log to support its redactions. Although the supporting affidavits suggested that the Senate did not make blanket redactions of subject matters, the documents produced indicated to the contrary. We accordingly concluded that remand for *in camera* review of certain redactions specifically challenged by Requesters was necessary to determine if they were supported by any of the privileges asserted by the Senate. *See Couloumbis v. Senate of Pennsylvania* (Pa. Cmwlth., No. 160 C.D. 2022, filed July 18, 2023).

## IV.  CONCLUSION

For the foregoing reasons, we conclude that the House has established that the attorney-client and work product privileges support its redactions and partial denial of the Request.  We accordingly affirm the final determination of the House AO.

_____

PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sam Janesch and Angela         :
Couloumbis,                       :
            Petitioners      :   No.  142 C.D. 2022
                            :
         v.                 :
                            :
Pennsylvania House of        :
Representatives,              :
            Respondent    :

## ***ORDER***

AND NOW, this 18th day of July, 2023, the January 19, 2022 final determination of the Appeals Officer of the Pennsylvania House of Representatives hereby is AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge